## NEW BIRMINGHAM DEVELOPMENT CO. v. B. F. BROOKS CONST. CO. et al. (No. 3294.)

Court of Civil Appeals of Texas. Texarkana. Nov. 11, 1926. On Motion for Rehearing Dec. 30, 1926. Writ of Error Dismissed for Want of Jurisdiction March 16, 1927.)

1. Mines and minerals ⏄51 (3)—Evidence held to sustain finding of jury valuing iron ore at 10 cents per ton.

Where plaintiff sold loose rock on its land at 10 cents per load to defendant, in action to recover value of iron ore removed with rock, evidence *held* to sustain finding of jury valuing iron ore at 10 cents per ton.

2. Mines and minerals ⏄51·(3, 5)—Amount iron ore would sell for, and not its cost of production, held proper measure of damages; evidence of mining cost properly excluded in action for value of ore taken.

In action to recover value of iron ore removed with rock from land of plaintiff, excluding testimony as to cost of mining ore was proper, where amount ore would sell for, and not its cost of production, was proper measure of damages.

3. Appeal and error ⏄989—In considering assignment complaining of fact finding as conflicting with and unsupported by evidence, reviewing court must look to record of testimony.

In considering an assignment complaining of a finding of fact as in conflict with and unsupported by evidence, reviewing court must look to the record of the testimony and be guided by what it discloses.

4. Appeal and error ⏄989—Reviewing court cannot use one unsupported finding of fact as proof that another finding should have been different.

A reviewing court cannot use one unsupported finding of fact as pertinent proof that another finding should have been different.

5. Mines and minerals ⏄51 (3)—Plaintiff had burden not only to show its property was wrongfully taken, but how much of it was taken.

In plaintiff's action to recover for iron ore removed by defendant from plaintiff's land and

not included in contract of sale, plaintiff had burden not only to show its property was wrongfully taken but how much of it was taken.

Appeal from District Court, Cherokee County; C. A. Hodges, Judge.

Action by the New Birmingham Development Company against the B. F. Brooks Construction Company and others. From a judgment for plaintiff in less unsatisfactory amount, it appeals. Reversed and remanded for new trial.

Guinn & Guinn, of Rusk, for appellant.
C. C. Westerfeld, of Dallas, for appellees.

HODGES, J. The appellant is a private corporation and owns a tract of mineral land, situated near the town of Rusk in Cherokee county. This land was valuable mainly for the iron ore which it contained. Twenty-five or thirty years prior to the filing of this suit, some of the ore had been mined and left piled in beds. Much of the land was covered with loose rock lying on the surface. In May, 1925, the Brooks Construction Company, the appellee, had a contract with the town of Rusk to build a dam for the purpose of providing a municipal water supply. In order to secure material needed in the construction of the dam, an agreement was entered into by which the construction company was permitted to gather rock from the appellant's land at 10 cents per wagon load. Claiming to act under that authority, the construction company collected and removed from the appellant's land 691 loads, consisting partly of loose surface rock and partly of iron ore taken from the old ore beds.

Appellant filed this suit against the Brooks Construction Company and the town of Rusk to recover the value of the ore, asserting that it was not included in the contract above referred to. In the amended original petition plaintiff concedes that it sold loose rock at 10 cents per load to the construction company, but denies the sale of iron ore then lying in beds on the ground. It is charged that 2,000 tons of ore, of the value of $2.50 per ton, were removed and converted by the defendants. Both the city and the construction company filed answers, but there is no occasion to notice that of the city, as it is not materially concerned in this appeal. The construction company in its answer admitted taking 691 loads of rock, set up its contract with the appellant, and denied any violation of its terms. It further alleged that the value of the iron ore was no greater than 10 cents per load, and pleaded an offer of payment of $69.10 and its refusal by the appellant's agent. Its answer was accompanied by a tender of that amount in court.

The court submitted the following special issues:

"(1) How many tons of ore, if any, in 691 loads?  Answer: 346 tons.

"(2) What was the aggregate intrinsic value of the ore, if any?  Answer: Ten cents per ton.

"(3) How many loads of surface rock, exclusive of ore, was hauled?  Answer: 345 loads."

[1] Judgment was entered in favor of the appellant for $69.10. In this appeal it is contended that this sum was inadequate and that the finding of the jury in response to the first and second interrogatories was contrary to the undisputed evidence. The contention is that the evidence showed a greater number of tons converted and that the value was greater. Upon the issue of value the appellant alleged that the ore had both a market value and an intrinsic value of $2.50 per ton. It also pleaded that it cost that sum to mine and pile the ore in beds on the ground.

The testimony makes it clear that there was no market for this ore for manufacturing purposes. Furnaces which had once been operated in that vicinity had been discontinued and the manufacture of iron abandoned. The inference is that this ore was mined when there was some prospects of its use in those furnaces. Judge F. B. Guinn, appellant's local agent, testified:

"This ore might lie there a million of years and not be worth a dime unless I had somebody to buy it; the same way as the oil fields. There is quite a good deal of that ore scattered over here. I do not know what the county pays for that ore to ballast the roads. They use a lot of ore from the old ore beds here, but they are the leavings where they hauled the ore out and left the small ore in the shape of gravel. This stuff has been lying there for 25 or 30 years—I expect it has been mined that long."

He also testified that it cost $2.50 per ton to mine the ore and pile it in beds, the condition this ore was in when taken by the appellee. The only demand for such ore was for surfacing public roads or reinforcing dams as in this instance.

R. R. Gregg, a witness for the defendants, testified:

"The price of ten cents per load was the usual price paid for such material. I understand that the Texas Steel Company gave the city a lot of iron ore for road building purposes."

Lewis, another witness, testified:

"I am acquainted with the market price of iron ore lands. They paid $10 per acre for the iron ore rights, and $15 per acre for the land where they bought the land."

Krom, a mining engineer, testified that the value per ton of the rock which he saw on the dam, "taking into consideration all kinds of rock intermingled on the dam," was from 50 to 75 cents per ton. This witness probably meant that would be the value if the ore were within reach of a furnace. Waggoner testified that he sold approximately 100 loads of old ore to the construction company for five cents per load. He understood that others were paid 10 cents per load.

[2] We think that evidence justified the jury in valuing the ore at 10 cents per ton. We are also of the opinion that the court committed no error in excluding additional testimony as to the cost of mining the ore. It was mined and held for sale, and was valuable to the owner for that purpose only. The amount it would then sell for, and not the cost of its production, would furnish the proper measure of the damages sustained. Norton v. Lea, (Tex. Civ. App.) 283 S. W. 318; M., K. & T. Ry. Co. v. Crews, 54 Tex. Civ. App. 548, 120 S. W. 1110; 10 Ruling Case Law, p. 956.

[3, 4] The jury found that of the material taken from the appellant's land 346 tons was iron ore. Appellant insists that the evidence conclusively shows a greater quantity was taken. The argument in support of that contention is based upon the admission that 691 loads of both kinds of material were taken, and the finding of the jury that 345 of those loads consisted of loose rock. If that finding be correct, the conclusion would follow that the remainder of the 691 loads, or 346, consisted of iron ore. Appellant then calls attention to the testimony of a number of witnesses who swore that they hauled as much as two tons at a load. Using the finding of the jury above referred to as supplementing the testimony, it would seem that appellant's contention is correct. But in considering an assignment complaining of a finding of fact as in conflict with or as unsupported by the evidence, we must look to the record of the testimony and be guided by what it discloses. When that is done in this case, we can find no evidence that would enable a jury to say how many of the 691 loads were loose rock, or how many were iron ore. While the finding that 345 loads were of loose rock is not attacked, it is, nevertheless, found to be without support in the evidence when we search for a verification of the appellant's charge with reference to the other finding. We cannot use one unsupported finding of fact as pertinent proof that another finding should have been different.

[5] If the judgment should be reversed and this case remanded for another trial, unless the plaintiff presented other testimony the jury would be without any evidence to support a finding that any determinate quantity of iron ore had been converted. It was a part of the burden assumed by the appellant, as plaintiff below, not only to show that its property had been wrongfully taken, but how much had been taken. That was necessary to furnish a basis for a judgment for a definite amount of damages.

From the record before us we cannot say, as a matter of law, that the appellant was injured by the verdict, or that more than 346 tons of the ore was taken. But assuming that the jury should have found that there were 346 loads of 2 tons each, making 692 tons of ore, when we apply the valuation made the court could have rendered a judgment for only 10 cents more than was awarded. The appellant sued only for the conversion of the iron ore, not for the contract price of the loose rock.

We find no reversible error, and the judgment will be affirmed.

### On Motion for Rehearing.

This suit is based upon a claim that 2,000 tons of iron ore was wrongfully taken from the appellant's land. We find, upon a closer examination of the record, that there is some evidence tending to support that claim. The appellees admitted taking 691 loads of material from the land. The evidence showed that much of this material was mined iron ore. In submitting the first special issue the court, in effect, assumed that only 691 loads of material consisting of loose rock and iron ore had been taken, and required the jury to find how much of that was iron ore. But apparently no complaint was made of that restrictive feature of the charge. The objection here urged is that the answer was unsupported by the evidence.

We have concluded that this assignment should be sustained; and for that reason the motion will be granted, the judgment of the trial court reversed, and the cause remanded for another trial.